YSABEL CASTORENO v. THE STATE.

No. 4831. Decided January 23, 1918.

1.—Murder—Circumstantial Evidence—Juxtaposition—Charge of Court.

Where, upon trial of murder, the facts were in such juxtaposition with the main fact that it was not necessary to charge upon circumstantial evidence there was no error in the court's failure to do so.

2.—Same—Charge of Court—Manslaughter—Malice

Where, upon trial of murder, the evidence showed malice and deliberation

in the killing, beyond the question of sudden passion from adequate cause, there was no error in the court's failure to submit manslaughter.

Appeal from the District Court of Bexar. Tried below before the Hon. S. G. Tayloe.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at fifteen years confinement in the penitentiary.

No bill of exceptions was reserved to the introduction of testimony. There is an exception to the failure of the court to charge the law of circumstantial evidence. There are some other exceptions, the force of which seem to be that there was no malice shown on the part of the defendant towards the deceased. These are rather general and based upon the fact that the testimony did not show there was any malice. We are of opinion that the court was justified in charging the jury as it did, and the facts were in such "juxtaposition" with the main fact that it was not necessary to charge upon the theory of circumstantial evidence. The State's evidence, in this connection, would show that on the 23rd of December, 1916, in a saloon owned by Slocum, were several men, among them defendant. The witness Koch sat on a barrel in the saloon. There came a discussion between Slocum and a Mexican as to who should pay for beer. Three of the Mexicans went out of the saloon and one of these who went out was defendant. Two others were Caterino Castorena, appellant's brother, and Dionicio Soto. There remained in the saloon two Mexicans, Refugio Gonzales and a Mexican by the name of Magarito Luna. The State's witness Hardin was about to leave the saloon when he turned and saw Slocum, the deceased, standing behind the bar and Luna in front of it. Luna was pulling at Slocum's sore hand, and Slocum slapped him in the face, and in doing so knocked off his hat. Slocum picked up Luna's hat and put it on Luna's head and went behind the counter. Luna reached over the counter and grabbed Slocum's hand, and Slocum told him not to do so, that it was quite sore from a cut or dog bite. Something more was said between the parties, and Slocum said to Luna: "You are one of these *malo hombres* (bad men)." "Yes, I am, replied Luna, and then I heard Mr. Slocum tell this Margarito Luna to get out of the saloon that he did not want his trade and did not want him in there. Mr. Slocum

Vol. 82 Crim.-38

then came from back of the counter and this man Maragito Luna stood
near the saloon door and cursed Mr. Slocum.  Mr. Slocum raised his
arm to strike Magarito Luna; at this time Refugio Gonzales came up
to Mr. Slocum as Mr. Slocum struck at Magarito Luna, and as he did
so Refugio Gonzales struck Mr. Slocum with his fist somewhere back
of the head.  Magarito Luna and Mr. Slocum stumbled out of the
saloon door and Refugio Gonzales follow Mr. Slocum." Witness ran
out of the saloon and followed Mr. Slocum about thirty or forty feet
away from the saloon.  Witness saw Luna on top of Slocum's back,
with his arm underneath Slocum's chin.  The defendant and his brother
were holding Slocum's right arm and Soto was holding his left arm.
Witness pulled the Mexicans off, and then Slocum started to his grocery
store, where his wife was.  Slocum entered the store and said to his
wife, "Mamma, I am cut and cut bad," then sank to the floor and in
three minutes was dead.  On cross-examination he says he saw this
bunch of Mexicans around Slocum.  The defendant was holding Slo-
cum's right arm and his brother Caterino also, and Dionicio Soto had
hold of Slocum's left arm.  Witness pulled the Mexicans away, defend-
ant being one of them, and the little Mexican, Luna, was on Slocum's
back, with his arm under Slocum's chin.  It was also stated in this
connection that immediately upon the separation of the parties, as above
indicated, when Slocum started in the saloon one Mexican said, *"Vamo-
nos pronto,"* which translated means, "Let's go quick," and also said,
*"Subite al vagon,"* that is, get in the wagon, in which these Mexicans
drove off.  They went away at a rapid rate.

The witness Koch testified practically as did the other witness, and
that when they went out of the saloon Slocum stumbled and Refugio
Gonzales hit him.  The other Mexicans went out of the saloon at the
same time.  Slocum and Luna were outside.  Witness ran out of the
saloon some thirty or forty feet and saw a bunch of Mexicans hitting
Slocum, and defendant was among them, and heard Slocum say, "Take
that knife out of my back."  The little Mexican, Luna, was on Slo-
cum's back.  The witness says it was dark; that the lights were on
while he was in the saloon  Mr. Hardin, the former witness, pulled
the Mexicans away from Slocum, and as Slocum started back to the
saloon he heard one of the Mexicans say, *"Vamonos pronto, subite el
vagon,"* which translated is, "Let's go quick, get in the wagon."  Mr.
Hardin pulled them off; the defendant and his brother had hold of
Slocum, so did Dionicio Soto have hold of Slocum's arm.  This is the
substance of the State's case.

This is in some respects contradicted by the defendant's testimony.
The serious question in the case, to the mind of the writer, is whether
or not the circumstances environing this difficulty were such as to ele-
vate it above manslaughter, but taking the State's case as above de-
tailed, we are of opinion that the jury was justified in finding that
there was murder in the case; that is, that the stabbing and all the en-

vironments show malice and deliberation in the killing beyond the question of sudden passion from adequate cause. The weapon used was a knife. What character of knife is not shown, and did not seem to enter particularly into the trial of the case, but the evidence shows that it was a large knife because it went in far enough to kill the man suddenly, and the evidence shows that the wound was at least five inches in depth, a stab in character. Under the facts detailed we would hardly feel justified in disturbing the verdict, and the judgment is, therefore, affirmed.

*Affirmed.*